**Affirm and Opinion Filed June 8, 2022**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

_____

**No. 05-21-00113-CV**
_____

**ALLEGHENY MILLWORK, INC., Appellant**
**V.**
**JEFF HONEYCUTT D/B/A NOAH QUALITY SERVICES, Appellee**

**On Appeal from the 380th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 380-03386-2018**

## MEMORANDUM OPINION

Before Justices Schenck, Carlyle, and Garcia
Opinion by Justice Schenck

Allegheny Millwork, Inc. ("Allegheny") appeals the trial court's order confirming an arbitration award, and judgment in conformance therewith, in favor of Jeff Honeycutt d/b/a Noah Quality Services ("NQS"). Allegheny urges the trial court erred in confirming the award and in denying its motion to vacate or modify same because the arbitrator exceeded her powers in arriving at the result that Allegheny was liable for NQS's actual damages and expenses of the proceeding. NQS asserts Allegheny's appeal is frivolous warranting sanctions against it. *See* TEX. R. APP. P. 45. We affirm the trial court's order and judgment and decline

NQS's request for imposition of sanctions. Because all issues are settled in law, we issue this memorandum opinion. *Id.* 47.4.

BACKGROUND

In July 2016, Allegheny and NQS entered into a subcontract agreement whereby NQS became the installer of doors and related hardware at a construction project known as Blue Star Omni Hotel. Allegheny had previously entered into an agreement with the project's general contractor, Manhattan Construction Company ("Manhattan"). That agreement was incorporated into the agreement between Allegheny and NQS.

Various disputes arose between Allegheny, NQS and Manhattan during the construction project. On July 13, 2018, NQS filed suit in the district court of Collin County against Allegheny, Manhattan, and the owner of the project. Pursuant to its agreement with Allegheny, made applicable to NQS as well, Manhattan moved to compel the matter to arbitration and the district court signed an agreed order compelling arbitration and abated the case.

NQS submitted a statement of claims to the arbitrator asserting claims of breach of contract, quantum meruit, and promissory estoppel against Allegheny and Manhattan, and additional claims of fraud and theft under the Texas Theft Liability Act against Allegheny. NQS claimed it was entitled to recover expenses it incurred as a result of delays and inefficiencies in the construction of the project. Allegheny denied liability on all counts asserting NQS was not entitled to any additional

–2–

payment absent approval of the owner and asserted a counterclaim for breach of contact claiming there were deficiencies in the work performed by NQS and that it suffered damages when NQS left the project before its completion.

Prior to the final hearing, Manhattan and Allegheny entered into a settlement whereby Manhattan made a payment to Allegheny, Allegheny agreed to indemnify Manhattan from claims arising from the project,[1] and NQS non-suited its claims against Manhattan. The dispute between Allegheny and NQS proceeded to a final arbitration hearing over two days in June 2020 before a single arbitrator. By agreement of all parties, the proceedings were not recorded or transcribed. On August 5, the arbitrator issued her Final Award in favor of NQS and made various findings, including the following:

> The contract between [Allegheny] and [NQS] was dated May 27, 2016 and signed in mid-July 2016 (the "Contract").
>
> There were inefficiencies on the job including but not limited to areas not being ready for door installation, lack of an adequate hardware room, lack of elevator access and out of sequence work. These inefficiencies required NQS to expend additional straight time hours and overtime hours.
>
> As a result of the inefficiencies on the job, pursuant to the Contract, NQS was entitled to receive additional compensation.

---

[1] As part of the settlement, a change order, Change Order No. 9, was approved adding:

$180,000 for any and all damages associated with any door installation performed under the scope of this subcontract. This settlement agreement is intended to resolve all claims known and future claims from Noah Quality Services. This arrangement does not release any remaining obligation in accordance with the original subcontract agreement, including, but not limited to, latent defects in labor and/or materials, provided to the project and/or warranty obligations.

–3–

Allegheny expected NQS to be paid an amount in excess of the stated contract amount.

Allegheny and NQS worked together to submit a claim to Manhattan Construction Company ("MCC"), the general contractor on the job.

On March 9, 2018, there was a meeting with Bill Wolf (on behalf of Allegheny) and Mark Penny (on behalf of MCC) during which 2 invoices were discussed—one for $32,749.70 for additional costs incurred by Allegheny and one for $207,000 for additional costs incurred by NQS. During the meeting, Wolf and Penny discussed the components of NQS's claim. MCC agreed to pay Allegheny an additional $180,000 in exchange for a release by Allegheny and indemnity from claims by NQS. Per Penny's testimony, MCC thought NQS had been delayed to some extent on the job. Penny testified that at least some portion of the money paid by MCC was to be used to settle NQS's claims.

NQS had unpaid retainage on the job of $10,750.

Allegheny asserts a backcharge of $116,742 against NQS. Notice of the backcharge was not presented to NQS as required by the Contract. The evidence presented to the Arbitrator was insufficient to show that the amounts included in the backcharge were reasonable, necessary and attributable to NQS.

Reasonable and necessary attorney's fees for representation of Claimant in this matter are $202,000. Claimant incurred expenses totaling $3,194.353.

The evidence does not support a finding of a violation of the Texas Theft Liability Act.

Based upon her findings, the Arbitrator awarded NQS actual damages of $166,162;[2]

attorney's fees and expenses in the amount of $205,194.35; interest at the rate of 5%

---

[2] The actual damages are comprised of a portion of the $180,000 Manhattan paid to Allegheny ($155,412) and the unpaid retainage ($10,750). The arbitrator explained her rational for apportioning the payment from Manhattan as follows:

commencing August 5, 2020; and reimbursement of AAA fees and expenses paid by NQS in the amount of $10,003.34.

NQS filed a motion in the district court seeking confirmation of the arbitrator's award and Allegheny moved to vacate or modify same. After hearing the motions, the district court denied Allegheny's motion to vacate or modify and granted NQS's motion to confirm, and issued a judgment in conformance with the arbitrator's final award. This appeal followed.

## DISCUSSION

### I. Standard of Review

Review of a trial court's decision as to vacatur or confirmation of an arbitration award is de novo and reaches to the entire record. *Centex/Vestal v. Friendship W. Baptist Church*, 314 S.W.3d 677, 683 (Tex. App.—Dallas 2010, pet. denied). Because Texas law favors arbitration, however, our review is "extremely narrow." *Id.*; *see also CVN Grp., Inc. v. Delgado*, 95 S.W.3d 234, 238 (Tex. 2002). An arbitration award is presumed valid and entitled to great deference. *Ancor Holdings, LLC v. Peterson, Golman & Villani, Inc.*, 294 S.W.3d 818, 826 (Tex. App.—Dallas 2009, no pet.). When reviewing an arbitration award, we may not substitute our judgment merely because we would have reached a different decision.

[a] total claim of $239,749.70 was submitted to [Manhattan] by Allegheny. Of that amount, $207,000 was attributed to NQS's work and $32,749.70 was attributed to Allegheny's work. [Manhattan] agreed to pay $180,000 in resolution of the claims. Divided proportionally, $155,412 is attributable to NQS's work and $24,567.92 is attributable to Allegheny's work.

–5–

*CVN Grp., Inc.*, 95 S.W.3d at 238.

## II. Applicable Law

Disputes that are committed by contract to the arbitral process almost always are won or lost before the arbitrator. *Tanox, Inc. v. Akin, Gump, Strauss, Hauer & Feld, L.L.P.*, 105 S.W.3d 244, 250 (Tex. App.—Houston [14th Dist. 2003, pet. denied). The party requesting vacatur, modification, or correction of an award bears the burden of establishing a valid statutory ground for disturbing the award. *Crossmark, Inc. v. Hazar*, 124 S.W.3d 422, 430 (Tex. App.—Dallas 2004, pet. denied). Grounds for vacating an arbitration award are limited to those enumerated in section 171.008(a) of the Texas Civil Practice & Remedies Code (Texas Arbitration Act) and section 10(a) of the Federal Arbitration Act.[3] One such statutory ground is that an arbitrator has exceeded his or her power. 9 U.S.C. § 10(a)(4); TEX. CIV. PRAC. & REM. CODE ANN. § 171.008(a)(3)(A). This is the sole statutory ground upon which Allegheny relies in seeking to set aside the damages and attorney's fee awarded to NQS and to modify the judgment to award it fees. For the reasons set forth herein, Allegheny's reliance on this ground, in all events, is misplaced.

---

[3] Our resolution of the issues presented here would not differ depending on whether the FAA or TAA applies. Accordingly, we need not determine whether the FAA or TAA applies. *See Cambridge Legacy Grp., Inc. v. Jain*, 407 S.W.3d 443, 448 (Tex. App.—Dallas 2013, pet. denied).

## III. Lack of Arbitration Transcript

As an initial matter, we consider what impact, if any, the parties' agreement not to record or transcribe the arbitration has on this appeal. The general rule is that without an arbitration transcript, we must presume the arbitration evidence adequately supported an award. *Centex/Vestal*, 314 S.W.3d at 684. As the application of that rule limits, rather than entirely forecloses, our consideration of whether the arbitrator exceeded her authority in this instance we proceed to the merits. *Id.* at 685.

## IV. Damages Awarded

In its first issue, Allegheny challenges the district court's confirmation of the damages awarded to NQS claiming the arbitrator exceeded her power by making the award based on a settlement between Allegheny and Manhattan.

At the outset, we note that although Allegheny couches its argument in terms of whether the arbitrator exceeded her powers in fashioning the award, its argument is actually a complaint that the arbitrator committed an error of law by, according to Allegheny, disregarding the terms of the written agreement between NQS and Allegheny, which Allegheny claims conditions delay payments on the approval of the owner. As an initial matter we note that without a transcript from the hearing, we must presume the arbitration evidence adequately supported an award. *Centex/Vestal*, 314 S.W.3d at 684. Moreover, while Allegheny contends the arbitrator exceeded her power in awarding NQS damages for the delay and

inefficiencies in the project, its complaint is in actuality that the arbitrator made a mistake of law or fact. Allegheny's reliance on *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662 (2010), for the proposition when an arbitrator strays from interpretation and application of the agreement and effectively dispenses his own brand of industrial justice his decision may be unenforceable is misplaced in this case. In *Stolt-Nielsen*, the agreement that the arbitrator strayed from was the limitation in the arbitration agreement itself. *Id.* at 671–72. Here, Allegheny contends the arbitrator strayed from the payment provisions of the subcontract to arrive at the award. Allegheny's reliance on *PoolRe Ins. Corp. v. Organizational Strategies, Inc.*, 783 F.3d 256, 262–63 (5th Cir. 2015), and *Beaird Industries, Inc. v. Local 2297, Int'l Union*, 404 F.3d 942, 947 (5th Cir. 2005), suffer for the same reason as the issue presented in those cases concerned the arbitration agreements. *See Timegate Studios, Inc. v. Southpeak Interactive, L.L.C.*, 713 F.3d 797, 805 n.17 (5th Cir. 2013) (after citing *Beaird* and another case stating, "Each of these cases involved contractual provisions which limited the arbitror's own authority and which the arbitrator had completely disregarded.").

An arbitrator does not exceed his or her power by making a mistake of law or fact. *Ancor Holdings*, 294 S.W.3d at 830. And we may not vacate an arbitration award for errors in interpretation, application of the law or facts, or even manifest disregard of the law. *Hoskins v. Hoskins*, 497 S.W.3d 490, 494 (Tex. 2016); *Ancor Holdings*, 294 S.W.3d at 829–30.

With this review standard in mind, we now turn to the question of whether the arbitrator had the authority to consider the effect of the settlement between Allegheny and Manhattan in resolving the dispute before her. An arbitrator's authority is limited to disposition of matters expressly covered by the agreement to arbitrate or implied by necessity. *Ancor Holdings*, 294 S.W.3d at 829. Arbitrators exceed their powers when they decide matters that are not properly before them. *Id.* Accordingly, we inquire whether the arbitrator had the authority, based on the arbitration clause and the parties' submissions, to reach a certain issue, not whether the arbitrator correctly decided the issue. *Id.*

Paragraph 3.5.2 of the agreement between Manhattan and Allegheny, incorporated into Allegheny's agreement with NQS, provides:

> All disputes between the parties shall be resolved by litigation, in a court of competent jurisdiction, except that Manhattan may, at its sole option, require that any dispute be submitted to arbitration pursuant to the Construction Industry Rules of the American Arbitration Association.

When an arbitration clause employs broad language such as this, it is construed as evidencing the parties' intent to be inclusive rather than exclusive. *Centex/Vestal*, 314 S.W.3d at 685. Further, the presumption of arbitrability is particularly applicable where there is a broad arbitration clause that purports to cover *any* claim or dispute. *See In Re Signor*, No. 05-16-00703-CV, 2017 WL 1046770, at *6 (Tex. App.—Dallas Mar. 20, 2017, orig. proceeding) (mem. op.) ("Both federal and Texas courts—including this Court—have concluded that similar arbitration provisions

–9–

that employ terms like "any dispute" and "relating to" are broad arbitration clauses capable of expansive reach and create a presumption of arbitrability.").

The authority of the arbitrators is also derived from the matters submitted for determination. *Centex/Vestal*, 314 S.W.3d at 686. Arbitrators do not exceed their authority when the matter addressed is one which the parties agreed to arbitrate during the arbitration itself. *Id.*

In its First Amended Statement of Claims, NQS asserted Allegheny breached its agreement by refusing to pay NQS for services performed; and alternatively, if the additional services provided by NQS were not covered by the parties' subcontract agreement, or an oral agreement, NQS sought to recover damages under the equitable theories of quantum meriut and equitable estoppel. In addition, NQS asserted claims of fraud and theft of service. The dispute over whether NQS was entitled to receive compensation due to alleged delays and inefficiencies in the construction process was clearly within the arbitration agreement and was squarely before the arbitrator to decide.

Having reviewed the arbitration clause and the written submissions in arbitration, indulging all reasonable presumptions in favor of the award, we cannot conclude the arbitrator exceeded her power in awarding NQS damages. We overrule Allegheny's first issue.

## V. Attorney's Fee Award

In its second issue, Allegheny, citing section 171.048(c) of the Texas Civil

Practice & Remedies Code,[4] claims the arbitrator exceeded her powers in awarding NQS attorney's fees and in failing to award it fees as the prevailing party on NQS's Texas Theft Liability Act claim and, thus, the trial court erred in confirming the award. An arbitrator exceeds his or her powers when he or she acts contrary to the express contractual provisions. *Ancor Holdings*, 294 S.W.3d at 829.

While the agreement between Allegheny and NQS is silent on the issue of attorney's fees, by incorporating the arbitration agreement between Allegheny and Manhattan, it does provide that disputes will be governed by the American Arbitration Association ("AAA") Construction Industry Arbitration Rules.

Rule 1 of the AAA Construction Industry Rules states, in relevant part:

> The parties shall be deemed to have made these Rules a part of their arbitration agreement whenever they have provided for arbitration by the American Arbitration Association (hereinafter AAA) under its Construction Industry Arbitration Rules or whenever they have provided for arbitration of a construction dispute pursuant to the Rule of the AAA without designating particular AAA Rules.

*See* AM. ARBITRATION ASS'N, CONSTRUCTION INDUSTRY ARBITRATION RULES & MEDIATION PROCEDURES, R-1(a) (eff. July 1, 2015). Rule 8 of the AAA Construction Industry Arbitration Rules provides, in relevant part, "The arbitrator

---

[4] Section 171.048(c) provides:

> The arbitrators shall award attorney's fees as additional sums required to be paid under the award only if the fees are provided for:
>
> (1) In the agreement to arbitrate; or
>
> (2) By law for a recovery in a civil action in the district court on a cause of action on which any part of the award is based.

TEX. CIV. PRAC. & REM. CODE ANN. § 171.048(c).

shall interpret and apply these Rules insofar as they relate to the arbitrator's powers and duties." *Id.* R-8. Moreover, when an arbitration agreement incorporates by reference outside rules, as it does here, those rules will apply unless they conflict with the express terms of the arbitration agreement. *Americo Life, Inc. v. Myer*, 440 S.W.3d 18, 24 (Tex. 2014).

> The AAA rule addressing awards of attorney's fees, Rule 48(d)(ii), states:
>
> The award of the arbitrator may include: . . . an award of attorneys' fees if all parties have requested such an award or its is authorized by law or their arbitration agreement.

AM. ARBITRATION ASS'N, CONSTRUCTION INDUSTRY ARBITRATION RULES & MEDIATION PROCEDURES, R-48(d)(ii). Because the agreement between Allegheny and NQS does not address the issue of attorney's fees, this rule does not conflict with an express provision in the parties' agreement and, thus, applies in this case. Consequently, under the parties' distinct agreement and incorporation of the AAA rules, there were three circumstances in which the arbitrator was vested with the authority to award attorney's fees (1) if all parties requested such an award *or* (2) if it was separately authorized by law *or* (3) if it is authorized by the arbitration agreement. Because of the use of the disjunctive "or," only one of the above criteria must be met in order for an award of attorney's fees to have been authorized by the AAA Construction Industry Arbitration Rules. *See* WEBSTER'S THIRD INT'L DICTIONARY 1585 (2002) (stating that "or" is used as a function word to indicate an alternative between different or unlike things, states, or actions); *see also* ANTONIN

–12–

SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS, 116 (2012) (noting that disjunctive use of "or" creates alternatives and that its use in a list indicates at least one item in the list is required, but any one or more of the items satisfies the requirement).

We begin by considering whether the parties requested awards of attorney's fees, satisfying the first criteria of Rule 48(d)(ii). Despite Allegheny's present argument, both parties submitted post-hearing briefs in which they requested attorney's fees. The arbitrator presumably found the post-hearing briefs to be requests for attorney's fees under Rule 48(d)(ii). Because the parties incorporated the AAA rules into their agreement and because those rules expressly permit the arbitrator to interpret her duties thereunder and allow for the award of attorney's fees if both parties request same, it was within the arbitrator's power to consider and determine that the parties' post-hearing briefs presented requests for attorney's fees under Rule 48(d)(ii). *See Ninety Nine Physician Servs., PLLC v. Murray*, No. 05-19-01216-CV, 2021 WL 711502, at \*4 (Tex. App.—Dallas Feb. 22, 2021, no pet.) (mem. op.). Accordingly, we conclude the arbitrator did not exceed her authority by awarding attorney's fees to NQS.

As to Allegheny's assertion the arbitrator erred in failing to award it attorney's fees as the prevailing party on NQS's Texas Theft Liability Act claim, her failure to do so is an alleged mistake of law and not a basis for vacatur of the award.

*Centex/Vestal*, 314 S.W.3d at 683.[5]  We conclude the trial court did not err in confirming the award of attorney's fees.  We overrule Allegheny's second issue.

## VI.   Appellate Attorney's Fees

NQS asserts this appeal is frivolous under rule 45 of the Texas Rules of Appellate Procedure and, therefore, warrants an award of just damages to NQS.[6] TEX. R. APP. P. 45.  Rule 45 provides:

> If the court of appeals determines that an appeal is frivolous, it may—on motion of any party or on its own initiative, after notice and a reasonable opportunity for response—award each prevailing party just damages. In determining whether to award damages, the court must not consider any matter that does not appear in the record, briefs, or other papers filed in the court of appeals.

*Id.*  Earlier cases addressing sanctions under this rule are read against the backdrop of the American Rule against fee shifting.  Generally, whether an appeal is frivolous is considered at the time of the filing of the notice of appeal and is determined by whether the advocate had a reasonable ground to believe the judgment would be reversed.  *D Design Holdings, L.P. v. MMP Corp.*, 339 S.W.3d 195, 205 (Tex. App.—Dallas 2011, no pet.).  Four factors that tend to indicate an appeal is frivolous are (1) the unexplained absence of a statement of facts, (2) the unexplained failure to file a motion for new trial when it is required to successfully assert factual

---

[5] *See WWW.Urban.Inc. v. Drummond*, 508 S.W.3d 657, 668 (Tex. App.—Houston [1st Dist.] 2016, no pet.).

[6] NQS specifically requests that this Court award it attorney's fees in the amount of $52,520 for legal services provided not only in connection with this appeal, but also services provided following the arbitrator's award in connection with the parties' filings in the district court.

–14–

sufficiency on appeal, (3) a poorly written brief raising no arguable issues, and (4) the appellant's unexplained failure to appear at oral argument. *Id.* The determination of whether an appeal is frivolous is not necessarily limited to a consideration of the circumstances that existed at the time the appeal is perfected; it may extend to pursuit of the appeal thereafter. *Id.* Litigants are required to act in good faith and pursue only potentially meritorious arguments, mindful of the costs involved. *See id.*

The decision to grant appellate sanctions is a matter of discretion that an appellate court exercises with prudence and caution and only after careful deliberation. *Owen v. Jim Allee Imps., Inc.*, 380 S.W.3d 276, 290 (Tex. App.—Dallas 2012, no pet.). Under our precedent, we will exercise the discretion to award fees only in circumstances that are truly "egregious." *Id.*

Courts presume that papers, such as notices of appeal, are filed in good faith. TEX. R. CIV. P. 13. Allegheny filed its notice of appeal in the district court on February 17, 2021. While caselaw addressing the excessive authority standard of review were numerous and contrary to Allegheny's presentation on the merits, at the time the appeal was perfected, the Court had not yet published its decision in *Ninety Nine Physicians*, addressing the arbitrator's authority to award fees.[7] Thus, the appeal at the outset presented at least one colorable avenue for good-faith advocacy.

---

[7] The opinion in *Ninety Nine Physicians* was filed on February 22, 2021.

–15–

Accordingly, we cannot conclude it was frivolous at the time Allegheny filed its notice of appeal.

We now address whether the appeal, with respect to attorney's fees, was then **pursued** in bad faith. After the mandate issued in *Ninety Nine Physicians* on May 5, 2021, Allegheny's argument concerning attorney's fees was no longer plausible and it presented no basis for rejection of same. While Allegheny's counsel's failure to reconcile or even address that the case is disappointing, and thereby raises an issue of candor with the Court,[8] we do not see it as sufficiently egregious to support a shifting of fees, and certainly not in the amount requested by NQS. Given this Court's familiarity with its own opinion in *Ninety Nine Physicians*, a brief reference to the case in response to the attorney's fee issue would have sufficed.

With respect to Allegheny's main issue, addressing the trial court's confirmation of the damages awarded to NQS, although we have rejected Allegheny's arguments, an issue's lack of merits does not necessary equate to bad faith. *Cedacero-Guamancela v. Sustaita-Salazar*, No. 05-18-00083-CV, 2019 WL 289663, at *4 (Tex. App.—Dallas Jan. 23, 2019, no pet.) (mem. op.). We cannot conclude that Allegheny's pursuit of this issue, and miscomprehension of a potentially complex area of the law, rose to the level of bad faith warranting a shifting of fees.

---

[8] NQS filed its appellee brief on September 16, 2021, citing to *Ninety Nine Physicians*. The mandate issued in that case on May 5, 2021. Allegheny filed its reply brief on October 18, 2021, and did not address *Ninety Nine Physicians*.

On the record before the Court, we do not conclude that the circumstances of this appeal were truly egregious. *See id.*, 2019 WL 289663, at *4. Accordingly, we deny NQS's request for an award of appellate fees.

## CONCLUSION

We affirm the trial court's order confirming the arbitration award and judgment in conformity therewith.

<table>
<tr><td></td><td>/David J. Schenck//</td></tr>
<tr><td>210113f.p05</td><td>DAVID J. SCHENCK<br>JUSTICE</td></tr>
</table>

–17–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ALLEGHENY MILLWORK, INC.,
Appellant

No. 05-21-00113-CV  V.

JEFF HONEYCUTT D/B/A NOAH
QUALITY SERVICES, Appellee

On Appeal from the 380th Judicial
District Court, Collin County, Texas
Trial Court Cause No. 380-03386-
2018.
Opinion delivered by Justice
Schenck. Justices Carlyle and Garcia
participating.

In accordance with this Court's opinion of this date, the order confirming the arbitration award and judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee JEFF HONEYCUTT D/B/A NOAH QUALITY SERVICES recover its costs of this appeal from appellant ALLEGHENY MILLWORK, INC..

Judgment entered this 8th day of June 2022.